UNITED STATES DISTRICT COURT         FILE UNDER SEAL
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| *In Re* The Matter of the Arbitration Between | : |
| AMERICAN CENTENNIAL INSURANCE | : |
| COMPANY, | : |
| | :    Case No: _____ |
| Petitioner, | : |
| and | : |
| | : |
| GLOBAL INTERNATIONAL REINSURANCE | : |
| COMPANY LIMITED, | : |
| | : |
| Respondent. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AMERICAN CENTENNIAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF PETITION TO VACATE ARBITRATION AWARD

Date: February 24, 2012

DEWEY & LEBOEUF LLP

John M. Nonna
Larry P. Schiffer
Suman Chakraborty
1301 Avenue of the Americas
New York, New York 10019
(212) 259-8000
jnonna@dl.com
lschiffer@dl.com
schakrab@dl.com

*Counsel for American Centennial Insurance Company*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

JURISDICTION AND VENUE ........................................................................................2

PARTIES ...........................................................................................................................3

STATEMENT OF FACTS ................................................................................................3

      A.      Background ...........................................................................................3

      B.      The Dispute ..........................................................................................5

      C.      The Third Arbitration...........................................................................8

ARGUMENT....................................................................................................................12

I.      Applicable Law.....................................................................................................12

II.     Legal Standard .....................................................................................................13

III.    The Final Award Fails to Comport with the Plain and Unambiguous Terms of the Claims Practices Provision of the Binder of Reinsurance ...................................14

      A.      The Third Arbitration Panel Ignored the Material Increase in Liabilities Term of the Claims Practices Provision.................................................16

      B.      The Third Arbitration Panel Ignored the Risk Position Term of the Claims Practices Provision.................................................................................18

      C.      The Third Arbitration Panel's Award of Interest is Defective .............20

IV.    The Final Award Should be Vacated for Lack of Reasons.................................20

V.     The Final Award Violates the Arbitration Provision's Requirement of Reasonableness .....................................................................................................22

VI.   The Arbitration Panel Directly Contradicted the Final Awards of the First and Second Arbitration Panels...................................................................................22

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Centennial Ins. Co. v. Gerling Global Int'l Reinsurance Co.*,
   No. 04 Civ. 4605 (TPG), 2005 U.S. Dist. LEXIS 5370 (Mar. 31, 2005) ................................7

*Bergesen v. Joseph Muller Corp.*,
   710 F.2d 928 (2d Cir. 1983)..........................................................................................12

*Cont'l Ins. Co. v. Miller*,
   177 N.Y. 515 (1904) ......................................................................................................1

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
   333 F.3d 383 (2d Cir. 2003)..........................................................................................24

*F. Hoffmann-La Roche Ltd. v. Qiagen Gaithersburg, Inc.*,
   730 F. Supp. 2d 318 (S.D.N.Y. 2010)............................................................................13

*Halligan v. Piper Jaffray, Inc.*,
   148 F.3d 197 (2d Cir. 1998).....................................................................................16, 24

*In re Arbitration Between Midland Metals Corp. & Cables de Communicaciones, S.A.*,
   No. 85 Civ. 5541, 1985 U.S. Dist. LEXIS 14199 (S.D.N.Y. 1985) .........................................20

*Inter-City Gas Corp. v. Boise Cascade Corp.*,
   845 F.2d 184 (8th Cir. 1988) ...................................................................................14, 18

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*,
   808 F.2d 930 (2d Cir. 1986)....................................................................................24, 25

*N. River Ins. Co. v. ACE Am. Reins. Co.*,
   361 F.3d 134 (2d Cir. 2004)............................................................................................1

*New Elliott Corp. v. MAN Gutehoffnungshütte AG*,
   969 F. Supp. 13 (S.D.N.Y. 1997) .............................................................................20, 21

*PMA Capital Ins. Co. v. Platinum Underwriters Berm., Ltd.*,
   659 F. Supp. 2d 631 (E.D. Pa. 2009), *aff'd*, 400 Fed. Appx. 654 (3d Cir. 2010)........14, 17, 18

*Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*,
   No. 10-0910-CV, 2012 WL 335772 (2d Cir. Feb. 3, 2012) .............................................12, 13

*Schwartz v. Merrill Lynch Co. Inc.*,
   No. 10-0826, 2011 U.S. App. LEXIS 23803 (2d Cir. Nov. 30, 2011) ...............................14, 19

*Sonic Auto., Inc. v. Price,*
   No. 3:10 Civ. 382, 2011 U.S. Dist. LEXIS 90359 (W.D. N.C. Aug. 12, 2011)...............14, 18

*Southland Corp. v. Keating,*
   465 U.S. 1 (1984)......................................................................................................24

*Stolt-Nielsen SA v. Animal Feeds Int'l Corp.,*
   130 S. Ct. 1758 (2010)...........................................................................................13, 19

*Stolt-Nielsen SA v. Animal-Feeds Int'l Corp.,*
   548 F.3d 85 (2d Cir. 2008), *rev'd on other grounds,* 130 S. Ct. 1758 (2010)........................13

*Westerbeke Corp. v. Daihatsu Motor Co.,*
   304 F.3d 200 (2d Cir. 2002)....................................................................................14, 19

*Western Employers Ins. Co. v. Jefferies & Co.,*
   958 F.2d 258 (9th Cir. 1992) ...................................................................................20, 21

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,*
   103 F.3d 9 (2d Cir. 1997).......................................................................................24, 25

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.,*
   126 F.3d 15 (2d Cir. 1997), *cert. denied* 522 U.S. 1111 (1998)...........................12, 14, 15, 17

## STATUTES

9 U.S.C. §§ 9...................................................................................................................2

9 U.S.C. § 10(a)(4)..............................................................................................1, 12, 13, 20

9 U.S.C. § 201................................................................................................................24

9 U.S.C. §§ 201-08 ............................................................................................12, 13, 24, 25

9 U.S.C. § 203...................................................................................................................2

28 U.S.C. § 1332(a)(2).........................................................................................................2

28 U.S.C. § 1391(a)(2).........................................................................................................2

## INTRODUCTION

This memorandum supports Petitioner's motion to vacate a final arbitration award and related orders. Vacatur is required because, in making these awards and orders, the arbitrators exceeded their powers in violation of 9 U.S.C. § 10(a)(4), as the awards and orders (1) violate and manifestly disregard the terms of the parties' contract; (2) are in direct conflict with prior binding arbitration awards; and, (3) are completely irrational and unreasonable. This case involves an arbitration under a reinsurance contract. Reinsurance is "a contract by which one insurer insures the risks of another insurer." *N. River Ins. Co. v. ACE Am. Reins. Co.*, 361 F.3d 134, 137 (2d Cir. 2004) (quoting *Cont'l Ins. Co. v. Miller*, 177 N.Y. 515 (1904)).

Petitioner brings this petition fully recognizing the deference customarily accorded by courts to arbitral decisions. Unfortunately, the parties have slogged through no less than *three* full-blown arbitrations over the past eight years, reflecting a concededly contentious relationship under a reinsurance contract (as well as a healthy regard for the arbitral process). Though the parties may have each been disappointed by certain arbitral rulings during this protracted process, neither has—until now—sought vacatur of any arbitral ruling, and have accepted, perhaps reluctantly, these rulings. Contentious though their history may be, neither party has filed a baseless motion to vacate an arbitral award, nor has Petitioner done so here.

The dispute is about the application of a contractual provision, which under very specific and limited circumstances permits an adjustment to Respondent's liabilities under the reinsurance contract. Under the plain and unambiguous terms of this provision, an adjustment may be allowed only if there is a change in Petitioner's claims handling practices and only if that change causes a material increase in Respondent's liabilities. If both a change and a material increase in liabilities occur, then an adjustment is permitted, but only one that puts Respondent in the risk position it would have been in had there been no change.

A majority of the arbitrators issued a final award granting Respondent a significant adjustment to its liabilities under the reinsurance contract, but did so without any analysis or determination that Respondent's liability had materially increased or that the adjustment would put Respondent in the risk position it would have been in had there been no change, and in violation of previous binding arbitration awards. No reasons or rationale for this adjustment were provided by the arbitration panel in its award and orders as is required by the contract.

When an arbitration panel issues an award that effectively writes a provision out of a contract, grants relief in a manner contrary to the plain and unambiguous terms of a contract, and improperly reverses a prior binding arbitration award, that award must be vacated as exceeding the arbitrators' powers and for manifestly disregarding the terms of the contract. While great deference is given by courts to arbitral awards, arbitrators have no power to issue their own brand of industrial justice. Arbitrators are also without authority to make awards that plainly contradict or supersede the authority afforded under the contract. Neither can arbitrators disregard or modify the plain and unambiguous provisions of a contract.

The arbitration clause here required the arbitrators to issue a written award stating their reasons. It also required that the arbitrators make their award with a view to effecting the general purpose of the contract in a reasonable manner. When arbitrators fail to provide reasons for their award, they have failed to arbitrate the dispute according to the terms of the arbitration agreement. When arbitrators fail to meet their obligations under the arbitration provision, they have also exceeded their powers. The only remedy for these violations is to vacate the award.

## JURISDICTION AND VENUE

This Court has jurisdiction under 9 U.S.C. § 203 and 28 U.S.C. § 1332(a)(2). Petition ("Pet") ¶ 1. Venue is proper in this District under 28 U.S.C. § 1391(a)(2) and because the arbitration was conducted in New York, New York. 9 U.S.C. §§ 9, 204. Pet. ¶ 2.

## PARTIES

The Petitioner is American Centennial Insurance Company ("ACIC"), the petitioner in the underlying arbitration. ACIC is a Delaware-domiciled insurance company. Petition ¶ 3. The Respondent is Global International Reinsurance Company, Ltd. ("Global"), the respondent in the underlying arbitration. Global is a Barbados-based reinsurer. Pet. ¶ 4. ACIC and Global are parties to a reinsurance contract by which Global reinsures certain obligations of ACIC under insurance policies. ACIC issued to thousands of insured companies (the "Binder of Reinsurance"). *See* Exhibit A to the Declaration of John M. Nonna, dated March 5, 2012 ("Nonna Dec."). Both companies are in runoff; meaning that neither company writes new insurance or reinsurance policies and both are merely running off their remaining obligations on old policies, including the Binder of Reinsurance. Essentially, runoff is an orderly wind-down of the insurance or reinsurance company's business. Pet. ¶ 5.

## STATEMENT OF FACTS

### A.     Background

ACIC ceased issuing new general liability and excess insurance policies in 1983 and has been orderly running off since that time. Pet. ¶ 5. On July 1, 1997, ACIC and Global executed the Binder of Reinsurance under which Global agreed to indemnify ACIC (in various layers of coverage at varying percentages in each layer) for certain losses ACIC may suffer under insurance policies issued to ACIC's insureds. Pet. ¶ 6; Nonna Dec. Ex. A. The Binder of Reinsurance contains an arbitration clause, which provides, in part, that

> Any dispute arising out of the interpretation, performance or breach of this Agreement, including the formation or validity thereof, shall be submitted for decision to a panel of three arbitrators.
> * * *

3

> The decision of the majority of the panel shall be rendered in writing, stating the reasons therefor, and shall be final and binding.
>
> * * *
>
> The panel shall interpret the Agreement as an honorable engagement, and shall make its award with a view to effecting the general purpose of the Agreement in a reasonable manner rather than in mere accordance with the literal interpretation of the language.
>
> Nonna Dec. Ex. A at G009905-06.

Since 1999, ACIC and Global have had an ongoing dispute about Global's share of the losses ceded to it by ACIC under the Binder of Reinsurance. Those losses include (a) claim payments made by ACIC on its underlying insurance policies; (b) commutation payments made by ACIC to its insureds to terminate ACIC's obligations under its insurance policies; and, (3) loss adjustment expenses ("LAE") related to the handling of the underlying claims. LAE consists of claims handling costs, including ACIC's coverage counsel's fees expended by ACIC in defense of underlying claims and declaratory judgment actions. Pet. ¶ 8.

There were two prior arbitrations between the parties; one that concluded in January 2004 (the "First Arbitration") and another that concluded in March 2008 (the "Second Arbitration"). This arbitration began on December 3, 2008 (the "Third Arbitration"). Pet. ¶ 10. In the Third Arbitration, Global alleged that certain corporate transactions that resulted in changes in control of ACIC impacted ACIC's overall claims handling practices such that Global was entitled to a reduction on the amount of losses it must indemnify ACIC for under the Binder of Reinsurance. The Third Arbitration hearing was held on November 15-18, 21-23, 2011. Pet. ¶ 11.

The arbitrators made their Final Award on December 4, 2011. Nonna Dec. Ex. B. The Final Award was issued by a majority of the arbitrators, with one arbitrator filing a written dissent. Two Supplemental Orders made on January 13, 2012 (majority order with a written dissent), Nonna Dec. Ex. C, and January 27, 2012, Nonna Dec. Ex. D, respectively, clarified

aspects of the relief granted by the arbitrators.  ACIC paid the balance due under the Final

Award, as clarified, under a full reservation of rights, on January 31, 2012.  Pet. ¶ 13.

**B.**   **The Dispute**

The dispute arises out of the application of the Change in Administrative and Claims

Practices provision in the Binder of Reinsurance (the "Claims Practices Provision") to certain

corporate changes affecting ACIC after the Binder of Reinsurance was effective.  The Claims

Practices Provision, Nonna Dec. Ex. A at G009909, states that

> If any intentional or unintentional change in the company's
> approach, method or guidelines in the processing, settling,
> administering or paying of claims, materially increases the
> Reinsurer's liability under this Agreement from what that liability
> would have been if there had been no such change, the Reinsurer
> shall prepare, and the Company shall accept, an adjustment of the
> portion of the claims which is reimbursable, or an adjustment of
> the Reinsurance Consideration, or any adjustments which will
> make the Reinsurer's risk position equivalent to that which would
> have been obtained under this Agreement if there had been no such
> change.
>
> The Reinsurer has the right to use auditing techniques, sampling
> techniques, or to otherwise investigate the nature and effect of any
> such change in administrative or claims practices or of any
> possible compensatory adjustment therefor.  Any dispute with
> respect to such adjustment shall be resolved by Arbitration as
> provided in ARTICLE __ ARBITRATION, of this Agreement.

In 1999, ACIC and its parent and affiliates were acquired by the White Mountains

Insurance Group ("White Mountains").  The acquisition prompted Global to invoke the Special

Termination provision of the Binder of Reinsurance, which resulted in a reduction in Global's

liability by 50% in the top layer of the Binder of Reinsurance.  Pet. ¶ 16.  In December 2000,

ACIC was placed in the White Mountains organization as a direct subsidiary of Folksamerica

Reinsurance Company ("Folksamerica"), which in June 2001 would itself became a subsidiary

of OneBeacon Insurance Group after OneBeacon was acquired by White Mountains.  Pet. ¶ 17.

Thereafter, in December 2001, OneBeacon made a capital contribution to Folksamerica, ACIC's direct parent. Pet. ¶ 17 (collectively, the White Mountains Transactions").

Global, after learning about the White Mountains Transactions, issued a reservation of rights letter and ceased making payments under the Binder of Reinsurance, claiming that these transactions breached the Claims Practices Provision. Pet. ¶ 18. ACIC commenced the First Arbitration in December 2001 to enforce its rights under the Binder of Reinsurance. Pet. ¶ 19. Global sought rescission of the Binder of Reinsurance, arguing that it agreed to the Binder of Reinsurance on the assumption that ACIC was in a financially precarious position, and that ACIC's financial position would enable ACIC to obtain more favorable claim settlements and policyholder buy-backs or commutations in the belief that policyholders would accept reduced claim payments now, rather than risk a future ACIC insolvency and not be able to collect the full amount of their claims. Pet. ¶ 19. ACIC disputed that the language of the Claims Practices Provision proffered by Global was a part of the Binder of Reinsurance. After extensive discovery and a hearing, the First Arbitration panel issued its final award in which it denied Global's request for rescission, ruled that the Claims Practices Provision asserted by Global was, in fact, a part of the Binder of Reinsurance, and found that the 2001 White Mountains Transactions caused a breach of the Claims Practices Provision. Pet. ¶ 21; Nonna Dec. Ex. E.

In its final award, the First Arbitration panel ruled that the fact that ACIC became part of an insurance holding company of significant size did not in and of itself cause a breach of the Claims Practices Provision. But, the First Arbitration panel did find that ACIC's placement as a subsidiary of actively operating insurers and reinsurers that had a demonstrated record of capital support constituted a change in ACIC's "approach" to obtaining commutations from its insureds

in a manner materially adverse to Global.  Accordingly, the First Arbitration panel held that ACIC had breached the Claims Practices Provision as of the end of 2001.  Nonna Dec. Ex. E.

Although Global had not prepared an adjustment of its reinsurance obligations as required by the Claims Practices Provision, the First Arbitration panel ordered a 30% reduction on all loss and LAE paid by ACIC from January 1, 2002 through December 16, 2003 (defined as the "Discount Period"), on contracts not commuted during this period.  The First Arbitration panel stated that it believed a 30% reduction in Global's liability directly correlated to the arbitrators' experience with the relative motivations of insureds to commute their insurance policies.  The First Arbitration panel also ruled that after Global paid its reduced obligations to ACIC the provisions of the Binder of Reinsurance would control.  Nonna Dec. Ex. E.

In late 2003, ACIC was removed from the OneBeacon line of operating companies and was placed as a subsidiary of a new holding company, International American Group.  Pet. ¶ 24. The First Arbitration panel refused to rule on whether this change had cured the breach it found. Nonna Dec. Ex. F.  The parties stipulated to the confirmation of the First Arbitration panel's award and, on April 5, 2004, an order confirming the award was signed.  Pet. ¶ 26.

When ACIC billed Global after the Discount Period expired on December 16, 2003, Global refused to reimburse ACIC without a continued 30% reduction of its liabilities.  Pet. ¶ 27. ACIC then commenced an action to enforce the judgment entered on the confirmation of the First Arbitration panel's award to compel Global to pay amounts billed after December 16, 2003, without a 30% reduction.  Pet. ¶ 27.  The court denied ACIC's application and granted Global's motion to dismiss the action and compel arbitration.  *Am. Centennial Ins. Co. v. Gerling Global Int'l Reinsurance Co.*, No. 04 Civ. 4605 (TPG), 2005 U.S. Dist. LEXIS 5370 (Mar. 31, 2005).

In 2007, ACIC brought the Second Arbitration to determine if the breach found by the First Arbitration panel had been cured and whether the 30% reduction extended past December 16, 2003. Pet. ¶ 28. In its final award, the Second Arbitration panel concluded that the sole remedy for the breach found by the First Arbitration panel was the 30% reduction exclusively through the Discount Period, which ended on December 16, 2003. Nonna Dec. Ex. G. While the Second Arbitration panel did not expressly opine on whether the breach was in fact cured, it ruled that Global was not entitled to the continued benefit of any discount after December 16, 2003. The Second Arbitration panel also ruled that the relief it granted was without prejudice to Global's right to assert breaches of the Binder of Reinsurance after December 16, 2003, "other than the breach found and relied upon" by the First Arbitration panel. Nonna Dec. Ex. G.

In March 2008, as part of a tax free exchange under the Internal Revenue Code for White Mountains stock, General Reinsurance Corporation, an indirect subsidiary of Berkshire Hathaway, Inc. ("Berkshire Hathaway"), acquired ACIC's parent company, ACIC and affiliates, and another company (the "Berkshire Hathaway transaction"). Pet. ¶ 31. When the Berkshire Hathaway transaction closed in November 2008, Global advised ACIC that this transfer of ACIC was a breach of the Claims Practices Provision of the Binder of Reinsurance. Pet ¶ 32.

### C.    The Third Arbitration

On December 5, 2008, ACIC commenced the Third Arbitration; the subject of this action. Pet. ¶ 33. Early on, the parties moved for partial summary judgment on whether Global was barred by the Second Arbitration panel's award from seeking relief based on a continued breach of the Claims Practices Provision after December 16, 2003, caused by the White Mountains Transactions. Pet. ¶ 34. In a March 24, 2011 Final Interim Award, Nonna Dec. Ex. H, an arbitral majority denied ACIC's motion and granted Global's motion ruling that the Second Arbitration panel's award (which held that Global could assert breaches after December 16,

2003, *other than the breach found by the First Arbitration panel*) did not preclude Global from seeking relief in this Third Arbitration based on the White Mountains Transactions, which was the sole breach found by the First Arbitration panel. Pet. ¶ 34.

In their June 22, 2011 Final Interim Order #2, an arbitral majority held that the March 24, 2011 Final Interim Award "inherently included in that Ruling the continuation of the breach found by the [First Arbitration panel]." Nonna Dec. Ex. I.  The arbitrators then ruled that ACIC had the burden to prove that the breach found by the First Arbitration panel had been cured or that the amount of the adjustment sought by Global for the continued breach should be different than what the First Arbitration panel had awarded, ignoring the binding Second Arbitration panel's final award.  The effect of these two interim orders was essentially to reverse the Second Arbitration panel's award. Pet. ¶ 36.  The arbitrators also ruled that the burden was on ACIC to prove that a further breach of the Claims Practices Provision did not occur because of the Berkshire Hathaway transaction or that it was cured or that ACIC should not accept the amount of adjustment that Global sought for this alleged breach.  Nonna Dec. Ex. I.

Prior to the Third Arbitration hearing, and at the arbitrators' direction, Global served a Declaration of Breaches and Damages, Pet. ¶ 38, which advised ACIC and the arbitrators that Global was seeking, in part, the following relief in the Third Arbitration:

> a. A continued reduction of 30% on loss and LAE paid by ACIC on non-commuted contracts subsequent to December 16, 2003 based on ACIC's failure to cure the breach found by the First Arbitration panel (relief that the Second Arbitration panel had refused to give Global, but which the Third Arbitration panel revived).
>
> b. A 45% reduction on loss and LAE paid by ACIC on non-commuted contracts commencing the second quarter of 2008 based on a breach of the Claims Practices Provision by the Berkshire Hathaway transaction.

After extensive discovery, briefing, and a hearing, the arbitrators issued the Final Award. Nonna Dec. Ex. B.  An arbitral majority concluded that the existing breach as of December 17,

2003, resulting from the White Mountains Transactions, had not been cured and continued under ACIC's Berkshire Hathaway affiliation. The arbitrators found that neither ACIC nor its ultimate parents took a pro-active role in addressing the potential impact of the 2003 realignment of ACIC within the White Mountains Group or the 2008 transfer of ownership to Berkshire Hathaway on ACIC's policyholders' perceptions of the financial strength and stability of ACIC.

Remarkably, the arbitrators noted that ACIC had advanced a number of credible reasons why its runoff was taking longer than Global originally anticipated, and expressly praised ACIC by stating that they did not find *any* fault in how claim settlements and commutations were pursued by ACIC. Yet, the majority then found—without providing any reasons—that Global was entitled to a 15% reduction on all losses and LAE paid by ACIC after the First Arbitration panel's Discount Period, *i.e.*, from December 17, 2003 until the breach was cured or coverage was exhausted on contracts that were not commuted during this period. The Third Arbitration majority also awarded 3% interest to Global on the balance due upon Global's award of 15% of paid losses and LAE net of commutations. Nonna Dec. Ex. B.

Global was directed to prepare a calculation of the amount due on the 15% reduction in paid losses and LAE from December 17, 2003 through ACIC's most current account, less commutation payments, show the interest due, and submit the results to ACIC and the arbitrators for review and approval. Nonna Dec. Ex. B. Finally, the arbitrators reconfirmed that the parties were to continue to be bound by the terms of the Binder of Reinsurance. Nonna Dec. Ex. B.

The dissent noted that the majority's finding, that there was no cure of the breach of the Claims Practices Provision, lacked reasoning and that the majority cited no evidence to support its 15% reduction award. The dissent also criticized the majority for failing to provide any reasoning or evidentiary support showing that there was a change in claims practices that

10

resulted in the breach of the Claims Practices Provision and which materially increased Global's liability, even though the Claims Practices Provision was clear that the change must materially increase Global's liability for an adjustment to be warranted. Nonna Dec. Ex. B, Dissent.

After the Final Award, a dispute arose between the parties about the calculation of the 15% reduction. Pet. ¶ 45. After oral argument, a majority of the arbitrators issued Supplemental Order 1 on January 13, 2012, accepting Global's calculation, accompanied by a written dissent. Nonna Dec. Ex. C. The dissent reiterated that the majority had insufficiently complied with the Binder of Reinsurance's requirement that the arbitrators shall state reasons for their decision in the Final Award and again in Supplemental Order 1. The dissent also stated that by accepting Global's calculation, the majority was not requiring ACIC to "reimburse" Global based on an adverse impact to Global (as the Claims Practices Provision required), because the reduction ordered was being applied to losses and LAE paid solely by ACIC—losses that were never billed to Global and which amounts had never been paid by Global. Nonna Dec. Ex. C.

A further dispute arose as to the calculation of interest and the arbitrators issued Supplemental Order #2 on January 27, 2012, awarding Global a flat amount of interest of $105,000 untethered from the calculation of the 15% reduction amount. Nonna Dec. Ex. D. The arbitrators stated that under paragraph 22 of the Final Award, they did not consider the Binder of Reinsurance's various layers (some of which Global does not reinsure and has not been billed for) and the progression of losses and LAE paid by ACIC within those layers. The arbitrators ruled that Global was entitled to a 15% reduction of all losses and LAE paid by ACIC and that the discount calculation had no effect on the rate at which the layers of the Binder of Reinsurance are exhausted. Nonna Dec. Ex. D. In other words, the 15% reduction benefited Global regardless of whether ACIC had billed Global for those amounts or whether Global had

paid any of those amounts.  Pet. ¶ 47.  After issuing Supplemental Order #2, the arbitrators' duties concluded and the Third Arbitration panel became *functus officio*.  Pet. ¶ 48.

## ARGUMENT

### I.   APPLICABLE LAW

For a "nondomestic" arbitration award rendered in the United States, which is the case here, this Court is permitted to apply concurrently the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "Convention"), 21 U.S.T. 2517, 330 U.N.T.S. 38, implemented by Chapter 2 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 201-08, and the FAA, specifically 9 U.S.C. § 10(a)(4), upon a petition to vacate an arbitration award.  *See Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, No. 10-0910-cv, 2012 WL 335772, at *7 (2d Cir. Feb. 3, 2012).  Here, Global is a Barbados corporation with its principal place of business in Barbados and as such falls squarely within the ambit of *Bergesen v. Joseph Muller Corp.,* 710 F.2d 928, 932 (2d Cir. 1983), where the Second Circuit held that arbitration awards involving "parties domiciled or having their principal place of business outside the enforcing jurisdiction" are "not considered as domestic" and are thus subject to the Convention.  *See* Convention, Art. 1(1).

Moreover, Global and ACIC agreed on New York as the place of arbitration.  *See* Nonna Dec. Ex. A.  The arbitration was conducted in New York and the award was issued in the United States.  In *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.,* 126 F.3d 15, 21 (2d Cir. 1997), *cert. denied* 522 U.S. 1111 (1998), the Second Circuit, construing a similar "nondomestic" award, held that "Article V(l)(e) of the Convention [allows] a court in the country under whose law the arbitration was conducted to apply domestic arbitral law … to a motion to set aside or vacate that arbitral award."  The Second Circuit has recently reaffirmed this reasoning in *Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, in which the Court held that

because the award in that case was entered in the United States, the domestic provisions of the FAA, specifically section 10 of the FAA, also applied as is permitted under the Convention. 2012 WL 355772, at *7; *see F. Hoffmann-La Roche Ltd. v. Qiagen Gaithersburg, Inc.*, 730 F. Supp. 2d 318, 325 (S.D.N.Y. 2010).

## II.   LEGAL STANDARD

A court's review of an arbitration award under the FAA is severely limited. *Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 2012 WL 335772, at *8. The Second Circuit "has repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Id.* (quoting *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC.*, 497 F.3d 133, 138 (2d Cir. 2007)).   Nevertheless, the FAA permits vacatur of an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

Although courts in this Circuit defer to arbitrators upon a showing of "barely colorable justification" for their awards, they have not insulated arbitrators from judicial supervision. *See Stolt-Nielsen SA v. Animal-Feeds Int'l Corp.*, 548 F.3d 85, 92-93 (2d Cir. 2008), *rev'd on other grounds*, 130 S. Ct. 1758 (2010) (quoting *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004). In *Stolt-Nielsen SA v. Animal Feeds Int'l Corp.*, 130 S. Ct. 1758, 1767-68 (2010), Justice Alito sketched the contours of the test that should be applied in excess of power cases:

> It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." *Major League Baseball Players Assn.* v. *Garvey*, 532 U.S. 504, 509 (2001) *(per curiam)* (quoting *Steelworkers* v. *Enterprise Wheel & Car Corp.* , 363 U.S. 593, 597 (1960)).  In that situation, an arbitration decision may be vacated under §10(a)(4) of the FAA on the ground that the arbitrator "exceeded [his] powers," for the task of an arbitrator is to interpret and

13

enforce a contract, not to make public policy.  In this case, we must conclude that what the arbitration panel did was simply to impose its own view of sound policy regarding class arbitration (citation omitted)(changes in original).

Vacatur is also warranted when the "award is in manifest disregard of the terms of the [parties' relevant] agreement." *Schwartz v. Merrill Lynch Co. Inc*., No. 10-0826, 2011 U.S. App. LEXIS 23803 at *20 (2d Cir. Nov. 30, 2011) (quoting *Yusuf Ahmed*, 126 F.3d at 23 (addition in the original)).  "We apply a notion of 'manifest disregard' to the terms of the agreement analogous to that employed in the context of manifest disregard of the law." *Id*. (quoting *Yusuf Ahmed*, 126 F.3d at 25).  "Under our heightened standard of deference, vacatur for manifest disregard of a commercial contract is appropriate ... if the arbitral award contradicts an express and unambiguous term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract." *Westerbeke Corp. v. Daihatsu Motor Co*., 304 F.3d 200, 222 (2d Cir. 2002).  Moreover, the Second Circuit has stated that it "will overturn an award where the arbitrator merely 'makes the right noises—noises of contract interpretation—' while ignoring the clear meaning of contract terms." *Yusuf Ahmed*, 126 F.3d at 25 (quoting *Marine Pollution Serv., Inc. v. Local 282*, 857 F.2d 91, 94 (2d Cir. 1988)).

## III.   THE FINAL AWARD FAILS TO COMPORT WITH THE PLAIN AND UNAMBIGUOUS TERMS OF THE CLAIMS PRACTICES PROVISION OF THE BINDER OF REINSURANCE

Where an arbitration panel issues a final award that ignores and effectively writes out of the contract a plain and unambiguous term of the contract, the award must be vacated for exceeding the arbitrators' powers and manifestly disregarding the terms of the contract.  *See Schwartz v. Merrill Lynch Co. Inc*., 2011 U.S. App. LEXIS 23803 at *20 (quoting *Yusuf Ahmed*, 126 F.3d at 23); *PMA Capital Ins. Co. v. Platinum Underwriters Berm., Ltd.*, 659 F. Supp. 2d 631 (E.D. Pa. 2009), *aff'd*, 400 Fed. Appx. 654 (3d Cir. 2010) (Not for Publication); *Inter-City Gas Corp. v. Boise Cascade Corp.*, 845 F.2d 184 (8th Cir. 1988); *Sonic Auto. Inc. v. Price*, No.

14

3:10-CV-382, 2011 U.S. Dist. LEXIS 90359 (W.D. N.C. Aug. 12, 2011).  Here, the Third Arbitration panel purported to construe the Claims Practices Provision and found that there was a continuing and ongoing breach of the Claims Practices Provision entitling Global to an adjustment of its liabilities under the Binder of Reinsurance.  In reaching that determination in its Final Award and Supplemental Orders, the Third Arbitration panel ignored and effectively wrote out of the Claims Practices Provision essential, plain, and unambiguous terms that directly affect whether an adjustment may be given to Global under the Binder of Reinsurance.  *See Yusuf Ahmed*, 126 F.3d at 25 (quoting *Marine Pollution Serv., Inc. v. Local 282*, 857 F.2d at 94).

The Claims Practices Provision allows the parties to adjust Global's liabilities under the Binder of Reinsurance for specific and limited circumstances.  The Third Arbitration panel was bound to follow these contractual constrictions in determining whether an adjustment under the Claims Practices Provision was permitted.  First, for an adjustment to even be considered, there had to have been a change (whether intentional or unintentional) "in the company's approach, method or guidelines in the processing, settling, administering or paying of claims."  Nonna Dec. Ex. A.  In its Final Award, the Third Arbitration panel concluded "that the breach that existed as of December 17, 2003 under White Mountains has not been cured, and continues to this day under ACIC's affiliation with Berkshire."  Nonna Dec. Ex. B ¶ 21.  That conclusion was preceded by the finding that neither ACIC nor its ultimate parents took a proactive role in addressing policyholder perceptions of the financial strength and stability of ACIC in light of the White Mountains and Berkshire Hathaway transactions, *id.*, but failed to articulate any rationale for concluding that the breach continued after ACIC's corporate realignment in December 2003.  Assuming that the Third Arbitration panel's findings in paragraph 21 of the Final Award are

sufficient to support the conclusion that there was a "breach," in and of themselves those findings and conclusions are woefully insufficient to support the Final Award.[1]

A. **The Third Arbitration Panel Ignored the Material Increase in Liabilities Term of the Claims Practices Provision**

To authorize an adjustment of Global's liabilities under the Claims Practices Provision a second element must have existed.   A change in claims practices alone is insufficient.   The change must materially increase Global's liability under the Binder of Reinsurance from what that liability would have been if there had been no such change.   The Claims Practices Provision plainly and unambiguously provides that:

> If any intentional or unintentional change in the company's approach, method or guidelines in the processing, settling, administering or paying of claims, materially increases the Reinsurer's liability under this Agreement from what that liability would have been if there had been no such change, the Reinsurer shall prepare, and the Company shall accept, an adjustment . . . .

> Nonna Dec. Ex. A.

Nowhere in the Final Award or any of the Supplemental Orders does the majority of the Third Arbitration panel address the requirement that the change must materially increase Global's liability.   The Final Award is barren of any reference to the material increase requirement of the Claims Practices Provision save the mere quotation of the provision in paragraph 2 of the Final Award.   In a less than perfunctory manner, without any findings or reasons, the Third Arbitration panel concluded "that Global is entitled to a 15% reduction on all losses and loss adjustment expenses ("LAE") paid by ACIC during the period December 17,

---

[1] The Third Arbitration record demonstrates that, in fact, policyholders were repeatedly advised of ACIC's financial status and corporate transactions both through correspondence and annual regulatory filings.   "[W]here a reviewing court is inclined to find that arbitrators manifestly disregarded the law or the evidence and that an explanation, if given, would have strained credulity, the absence of explanation may reinforce the reviewing court's confidence that the arbitrators engaged in manifest disregard."   *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 204 (2d Cir. 1998).

2003 until the breach is cured, or coverage is exhausted, on contacts that were not commuted during this period." Nonna Dec. Ex. B ¶ 22.

The clear and unambiguous meaning of the Claims Practices Provision is that an adjustment for a change in claims practices is permitted only if the change materially increases the reinsurer's liability from that which it would have been if there had been no change. This requirement was recognized by the dissenting arbitrator. Nonna Dec. Ex. B, Dissent at 3-4. The Third Arbitration panel exceeded its powers under the Binder of Reinsurance by awarding an adjustment under the Claims Practices Provision without a finding that the alleged change in claims practices materially increased Global's liabilities from what they would have been if there had been no change. As the Second Circuit stated in *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, "[w]e will overturn an award where the arbitrator merely 'makes the right noises—noises of contract interpretation—' while ignoring the clear meaning of contract terms." 126 F.3d at 25 (citation omitted). Here, the Third Arbitration panel failed to even make the right noises of contract interpretation. The majority, instead, ignored the clear meaning of the material increase in liabilities term in the Claims Practices Provision and effectively wrote the requirement out of the contract.

In a recent reinsurance case in the Third Circuit, a motion to vacate an arbitration award was granted when the arbitration panel exceeded their power by eliminating a "deficit carry forward" provision of the contract as part of the final award. *PMA Capital Ins. Co. v. Platinum Underwriters Berm., Ltd.*, 659 F. Supp. 2d at 631. In *PMA*, the arbitration panel ordered that upon payment of the amount it found due, "any and all references to a 'deficit carry forward' in the [2003 Agreement will be] removed from the contract." *Id.* at 634. The District Court, in vacating the award, stated that this relief wrote out of existence a key provision of the contract

and that the arbitration panel offered no explanation for its decision.  The court held that the award could not be rationally derived from the agreement, was completely irrational, and was in manifest disregard of the contract.  *Id.* at 637-39.  On appeal, in a decision not for publication, the Third Circuit affirmed and stated:  "We agree with the District Court in all respects.  The arbitrators in this case, by ordering unrequested relief and rewriting material terms of the contract they purported to implement, went beyond the scope of their authority."  400 Fed. Appx. at 656; *see also Inter-City Gas Corp. v. Boise Cascade Corp.*, 845 F.2d at 187-89 (arbitrator disregarded plain and unambiguous contract language); *Sonic Auto., Inc. v. Price*, 2011 U.S. LEXIS 90359, at *37-*48 (arbitrator disregarded the operative arbitration agreements and wrote a material term out of the contract).

     The arbitrators here also went beyond the scope of their authority in granting relief that effectively wrote out of the Binder of Reinsurance a key provision of the Claims Practices Provision without any explanation for their decision.

**B.**     **The Third Arbitration Panel Ignored the Risk Position Term of the Claims Practices Provision**

     If there were a change in claims practices that materially increased Global's liability from that which it would have been if there had been no change, then an adjustment is authorized under the Claims Practices Provision.  That adjustment, however, must be "of the portion of the claims which is reimbursable, or an adjustment to the Reinsurance Consideration, or any adjustments which will make the Reinsurer's risk position equivalent to that which would have been obtained under this Agreement if there had been no such change."  Nonna Dec. Ex. A. Additionally, [a]ny dispute with respect to such adjustment shall be resolved by Arbitration."  *Id.*

     As with the requirement of a material increase in Global's liability, the Third Arbitration panel's Final Award and Supplemental Orders ignore and effectively write out of the contract the

plain and unambiguous terms of the Claims Practices Provision that require any adjustment to make Global's risk position equivalent to that which would have been obtained if there had been no change.   Nothing in the Final Award or Supplemental Orders remotely addresses this contractual requirement for an adjustment.   There are no findings, reasons, or discussions concerning the basis for the adjustment awarded. *See* Nonna Dec. Ex. B ¶ 22.

Even in the subsequent clarification proceedings that resulted in the Supplemental Orders, the only conclusions the Third Arbitration panel made were that the way Global calculated the adjustment was correct and that the calculation of the adjustment "has no effect on the rate at which contract layers are exhausted." Nonna Dec. Exs. C and D.  No mention is made about whether Global's method of calculation of the adjustment as adopted by the Third Arbitration panel made Global's risk position equivalent to that which would have been obtained under the Binder of Reinsurance if there had been no change in claims practices.

In fact, Global's calculation actually provides it with a reduction of loss and LAE amounts paid by ACIC that were never the liability of Global under the Binder of Reinsurance. The Final Award puts Global in a better risk position instead of an equivalent risk position by "reimbursing" funds to Global on amounts it never paid and never had any liability to pay, and by discounting Global's liabilities without regard to the coverage layers of the Binder of Reinsurance.  Essentially, the majority of the arbitration panel re-wrote the contract, unilaterally changed the parties' risk positions on their liabilities under the Binder of Reinsurance, and issued their own brand of industrial justice. *See Stolt-Nielsen v. Animal Feed*, 130 S. Ct. at 1767; *Schwartz v. Merrill Lynch Co. Inc.*, 2011 U.S. App. LEXIS 23803 at *20 (quoting *Yusuf Ahmed*, 126 F.3d at 23); *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d at 222.

C.   **The Third Arbitration Panel's Award of Interest is Defective**

In awarding Global interest on the calculated amount of the adjustment, the Third Arbitration panel exceeded its jurisdiction and issued an award in manifest disregard of the terms of the Binder of Reinsurance for the same reasons the award of the adjustment itself is defective. The Third Arbitration panel's failure to determine if the alleged change in claims practice caused a material increase in Global's liability and the additional failure to determine an adjustment that took Global's risk position into account is a fatal error that is compounded by an award of interest on the same amounts.

IV.   **THE FINAL AWARD SHOULD BE VACATED FOR LACK OF REASONS**

Where an agreement to arbitrate requires arbitrators to provide reasons for their award, the failure to provide reasons is a basis to vacate the arbitration award on the ground that the arbitrators exceeded their powers under 9 U.S.C. § 10(a)(4) by failing to meet their obligations under the contract and by failing to arbitrate the dispute according to the terms of the arbitration agreement. *See Western Employers Ins. Co. v. Jefferies & Co.*, 958 F.2d 258, 261-2 (9th Cir. 1992) (citing *Western Canada S.S. Co. v. Cia. De Nav. San Leonardo*, 105 F. Supp. 452 (S.D.N.Y.1952)); *accord New Elliott Corp. v. MAN Gutehoffnungshütte AG*, 969 F. Supp. 13, 15 (S.D.N.Y. 1997). In *Western Employers Ins. Co. v. Jefferies & Co.*, the Ninth Circuit held that an arbitration panel exceeded its authority under section 10(a)(4) when the panel failed to comply with a provision of the arbitration agreement that required the arbitrators make findings of fact and conclusions of law, thereby denying the objecting party the right to arbitration according to the terms for which it contracted.   958 F.2d at 261-62.   The court stated: "[A]rbitrators ... 'exceed their powers' ... when they fail to meet their obligations, as specified in a given contract, to the parties." *Id.; see also In re Arbitration Between Midland Metals Corp. & Cables de Communicaciones, S.A.*, No. 85 Civ. 5541, 1985 U.S. Dist. LEXIS 14199, at *4

(S.D.N.Y. 1985) (arbitration award vacated where arbitrator failed to make findings of fact as required by arbitration agreement).

In *New Elliott Corp. v. MAN Gutehoffnungshütte AG*, this Court agreed with the *Jefferies* Court, finding that arbitrators exceeded their powers where they failed to set forth findings of fact and conclusions of law as required by the arbitration agreement, but instead made "largely conclusory and unparticularized" determinations. 969 F. Supp. at 15. Here, there is no question that the Third Arbitration panel was obligated to provide reasons for their award. Paragraph F of the arbitration clause in the Binder of Reinsurance provides that the "decision of the majority of the panel shall be rendered in writing, stating the reasons therefor . . . ." Nonna Dec. Ex. A.

As the dissenting arbitrator points out, the Final Award and Supplemental Order No. 1, both lack any reasoning in support of the majority's award and adoption of Global's calculation of the adjustment awarded for the breach of the Claims Practices Provision. Nonna Dec. Exs. B and C (Dissents). The Final Award spans seven pages of mostly recitation of facts from the prior arbitrations and the procedural issues that arose up to the arbitration hearing. Some factual and legal findings appear in paragraphs 20 through 23 concerning burden of proof, policyholder perceptions, ACIC's claims handling, and commutations. No rationale, reasoning, analysis, or explanations appear anywhere in the Final Award or the Supplemental Orders for the Third Arbitration panel's conclusion that Global was entitled to a 15% reduction in its liabilities. No contract interpretation or analysis of application of the Claims Practices Provision appears in the Final Award or the Supplemental Orders. No reasoning appears anywhere for the Third Arbitration panel's conclusion that the breach found by the First Arbitration panel had not been cured and continued after ACIC's corporate realignment in late 2003. No reasoning appears

anywhere for the Third Arbitration panel's conclusion that the breach found by the First Arbitration panel "continues to this day under ACIC's affiliation with Berkshire."

The parties bargained for an arbitration that would conclude with a reasoned award. ACIC was deprived of its contractual right to reasons for the Final Award and Supplemental Orders.

## V.    THE FINAL AWARD VIOLATES THE ARBITRATION PROVISION'S REQUIREMENT OF REASONABLENESS

The arbitration provision in the Binder of Reinsurance requires, among other things, that the arbitration panel "shall interpret the Agreement as an honorable engagement, and shall make its award with the view to effecting the general purpose of the Agreement in a reasonable manner rather than in mere accordance with the literal interpretation of the language." Nonna Dec. Ex. A. In making its Final Award and Supplemental Orders, the Third Arbitration panel has failed to effect the general purpose of the Binder of Reinsurance in a reasonable manner. By awarding Global reimbursement of losses and LAE, plus interest, on amounts that it never paid and had no contractual obligation to pay, and by applying the adjustment calculation without consideration of the parties' contractual obligations under the different layers of the Binder of Reinsurance, the arbitrators acted unreasonably, irrationally, and have exceeded their powers.

## VI.    THE ARBITRATION PANEL DIRECTLY CONTRADICTED THE FINAL AWARDS OF THE FIRST AND SECOND ARBITRATION PANELS

The remedy granted by the First Arbitration panel for the breach of the Claims Practices Provision it found based on the White Mountains Transactions was a 30% discount on ACIC's loss and LAE payments on non-commuted contracts for a fixed Discount Period (January 1, 2002–December 16, 2003). Nonna Dec. Ex. E. In its Clarification Order, the First Arbitration panel reiterated that the relief granted only applied for the Discount Period. Nonna Dec. Ex. F.

The question of whether the breach found by the First Arbitration panel continued past December 16, 2003, was the subject of the Second Arbitration. The Second Arbitration panel's final award unambiguously provided that Global was not "entitled to continuing the benefit of any discount . . . after December 16, 2003 by reason of the clear time limitations of the remedies contained in the Prior Orders." Nonna Dec. Ex. G. While granting Global the right to assert breaches after December 16, 2003, the Second Arbitration panel specifically and unambiguously limited Global's right to breaches "*other than the breach found and relied upon in the Prior Award . . . .*" Nonna Dec. Ex. G (emphasis added). The arbitration clause in the Binder of Reinsurance provides that the decision of a majority of the arbitrators "shall be final and binding." Nonna Dec. Ex. A. ACIC extinguished its obligations for the breach found by the First Arbitration panel by accepting the 30% reduction on Global's liabilities.

In spite of the obvious limitation articulated by the First and Second Arbitration panels on Global's ability to argue a continuing breach and obtain a further recovery based on the White Mountains Transactions after December 16, 2003, the Third Arbitration panel concluded, without any reasoning, that Global indeed could seek relief in the Third Arbitration for the same breach found by the First Arbitration panel for periods after December 16, 2003. Nonna Dec. Exs. B, H, and I. This ruling improperly reopened ACIC's extinguished obligations for the breach found by the First Arbitration panel.

The Third Arbitration panel's ruling on the continuing breach based on the White Mountains Transactions is directly contrary to both the First and Second panel's contractually binding final awards and, therefore, is in excess of the Third Arbitration panel's powers, is unreasonable, and is irrational.

23

Moreover, the Third Arbitration panel's ruling manifestly disregards the final and binding effect of arbitral awards as a fundamental rule of arbitration, and the explicit language of the Convention and the FAA as its implementing vehicle.  9 U.S.C. § 201; Convention, Art. III ("Each Contracting State shall recognize arbitral awards as binding and enforce them . . .").  The binding nature of arbitral awards is foundational to arbitration and our national policy favoring arbitration.  *See Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984).  If the binding nature of arbitral awards is disregarded, arbitration becomes meaningless as it is conceived as a cost-efficient and speedier dispute resolution method.  *Cf. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* Inc. 473 U.S. 614, 631 (1985).  In furtherance of these basic principles, Convention contracting states must recognize arbitral awards as binding.  Convention, Art. III.

It is difficult to think of a stronger case for manifest disregard of a clearly applicable rule and despite its narrow cut, the test for "manifest disregard of the law" is satisfied.  The governing law ignored by the arbitrators must be "well defined, explicit, and clearly applicable." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 934 (2d Cir. 1986).  They must have been "fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *See Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 389 (2d Cir. 2003).  In *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir. 1997), the Second Circuit recognized that the standard for manifest disregard of law "is difficult to apply...when arbitrators give no explanation for their decision."  In such cases, "a reviewing court can only infer from the facts of the case whether the arbitrators appreciated the existence of a clearly governing legal principle but decided to ignore or pay no attention to it." *Id.* at 12-13 (alterations and quotation marks omitted); *see Halligan v. Piper Jaffray, Inc.,* 148 F.3d at 204.

24

Here, the arbitrators were under an obligation to issue a reasoned award. Courts may infer manifest disregard of law if the arbitrator's error "is so obvious that it would be instantly perceived by the average person qualified to serve as an arbitrator." *Willemijn*, 103 F.3d at 13; *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d at 933. There is simply no discernible justification for the outcome reached by the two seasoned arbitrators in the majority other than manifest disregard of the FAA and the Convention and, accordingly, vacatur is required.

## CONCLUSION

For the reasons set forth above, ACIC respectfully requests that the Court enter an Order:

1.   Vacating the Final Award, the Final Interim Award, and the Supplemental Orders; and,

2.   Awarding such other and further relief as this Court deems just and proper.

Date: February 24, 2012

Respectfully submitted,

DEWEY & LEBOEUF LLP

John M. Nonna
Larry P. Schiffer
Suman Chakraborty
1301 Avenue of the Americas
New York, New York 10019
(212) 259-8000
jnonna@dl.com
lschiffer@dl.com
schakrab@dl.com

*Counsel for American Centennial Insurance Company*

25