UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In the Matter of the Arbitration Between

AMERICAN CENTENNIAL INSURANCE
COMPANY,

                              Petitioner,                    12 Civ. 1400 (PKC)

            -against-
                                                            MEMORANDUM
                                                             AND ORDER

GLOBAL INTERNATIONAL
REINSURANCE COMPANY, LIMITED,

                              Respondent.
---------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

          American Centennial Insurance Company ("ACIC") brings this petition to vacate

an arbitration award issued in favor of Respondent Global International Reinsurance Company,

Limited ("Global").  Global opposes ACIC's petition and cross-petitions to confirm the award.

          As will be explained more fully, ACIC's ownership structure evolved through a

series of acquisitions and corporate reorganizations between 1999 and 2008.  These events

caused Global to seek a reduction in its reinsurance obligations to ACIC under the parties'

reinsurance agreement.  The reinsurance agreement contains an arbitration provision.  The

arbitration provision includes an "honorable engagement" clause, requiring the arbitrators to look

beyond the "literal interpretation" of the agreement when issuing an award, and a clause

requiring the arbitrators to state the "reasons" for any award.

          The petition and cross-petition in this action concern the third of three arbitrations

conducted between the parties (herein referred to as the "First," "Second," and "Third

Arbitration").  The Third Arbitration was conducted before a panel of three industry arbitrators and included motion practice, fact discovery, briefing, and a seven-day hearing.  The issues before the panel were several, and included whether certain relief awarded to Global in the First and Second Arbitrations barred further relief.  By a two-to-one vote, the panel majority issued a seven-page award in favor of Global, though granting a much lower rate of reimbursement than was sought by Global.  The dissenting vote was cast by ACIC's party-appointed arbitrator. ACIC's petition to vacate that award is denied and Global's cross-petition to confirm the award is granted.

## BACKGROUND

ACIC is an insurance company with its principal place of business in Delaware. (Pet. ¶ 3.)  ACIC has been in "runoff" since 1983, winding down its business on existing policies but issuing no new policies.  (Pet. ¶ 5.)  Global is a reinsurance company organized under the laws of Barbados.  (Pet. ¶ 4; Cross-Pet. ¶ 1.)  In 1997, ACIC and Global entered into a written reinsurance agreement (the "Agreement").  (Nonna Decl. Ex. A.)  Among other things, the Agreement requires Global to indemnify ACIC for certain losses ACIC might incur under insurance policies issued to ACIC's insureds.  (Pet. ¶ 6; Cross-Pet. ¶ 5.)  The Agreement divides Global's reinsurance obligations into five vertical "layers" totaling $100 million.  As each layer is exhausted, the Agreement moves into the next layer.  (Cross-Pet. ¶ 6.)  Each of the five layers varies by percentage as to Global's reinsurance obligations.  (Id.)

> The Agreement contains an arbitration clause, stating in pertinent part:
>
> Any dispute arising out of the interpretation, performance or breach of this Agreement, including the formation or validity thereof, shall be submitted for decision to a panel of three arbitrators.
>
> . . .

> The panel shall be relieved of all judicial formality and shall not be bound by the strict rules of procedure and evidence. . . .   The decision of the majority of the panel shall be rendered in writing, stating the reasons therefor, and shall be final and binding.   The panel is empowered to grant interim relief as it may deem appropriate.

(Nonna Decl. Ex. A at G009905–06.)  Each party appoints an arbitrator of its choosing, with the two party-appointed arbitrators designating an impartial umpire to preside over the panel.  (Id. at G009905 ¶ B.)  All arbitrators must "be present or former executive officers of insurance or reinsurance companies . . . without past employment or directional relationships" with ACIC or Global.  (Id. ¶ D.)  The arbitration clause also contains an "honorable engagement" provision, which states as follows:

> The panel shall interpret the Agreement as an honorable engagement, and shall make its award with the view to effecting the general purpose of the Agreement in a reasonable manner rather than in mere accordance with the literal interpretation of the language.

(Id. at G009906 ¶ I.)  The arbitration clause quoted above remained in effect at all times relevant to this action.

The Agreement also contains a provision titled Change in Administrative and Claims Practices (the "Claims Practices Provision").  (Id. at G009909.)  Essentially, the Claims Practices Provision permits Global to seek a discount in its reinsurance obligations to ACIC upon certain changes in ACIC's corporate structure or operations.  The provision states in full:

> If any intentional or unintentional change in the company's approach, method or guidelines in the processing, settling, administering or paying of claims, materially increases the Reinsurer's liability under this Agreement from what that liability would have been if there had been no such change, the Reinsurer shall prepare, and the Company shall accept, an adjustment of the portion of the claims which is reimbursable, or an adjustment of the Reinsurance Consideration, or any adjustments which will

> make the Reinsurer's risk position equivalent to that which would
> have been obtained under this Agreement if there had been no such
> change.
>
> . . .
>
> Any dispute with respect to such adjustment shall be resolved by
> Arbitration as provided in . . . this Agreement.

(Id.) The parties' First, Second, and Third Arbitrations each concern the Claims Practices

Provision. ACIC's petition in this action seeks vacatur of the award and related orders issued in

favor of Global during the Third Arbitration. Because the Third Arbitration in part concerned

the scope of the relief awarded in the First and Second Arbitrations, the three arbitrations and the

events preceding them are described below to the extent pertinent to this action.

       I.      The First Arbitration

In 1999, ACIC and its parent corporation were acquired by the White Mountains

Insurance Group ("White Mountains"). (Pet. ¶ 16.) In June 2001, White Mountains acquired the

OneBeacon Insurance Group ("OneBeacon") and made ACIC a subsidiary of OneBeacon. (Pet.

¶ 17.) In December 2001, OneBeacon made a capital contribution of $400 million to ACIC's

parent corporation. (Id.) Upon learning of these transactions (herein referred to as the "White

Mountains reorganization"), Global issued a reservation of rights letter to ACIC claiming that

ACIC had violated the Claims Practices Provision. (Pet. ¶ 18; Cross-Pet. ¶ 10.) ACIC then

commenced the First Arbitration to determine the parties' obligations regarding the White

Mountains reorganization. (Pet. ¶ 19.)

The First Arbitration consisted of a six-day evidentiary hearing and resulted in an

award to Global. The three-arbitrator panel (the "Tierney Panel") found that "ACIC's placement

as a subsidiary of [OneBeacon] . . . would significantly affect an insured's analysis of" ACIC's

ability to pay claims. (Nonna Decl. Ex. E.) Because ACIC was operating in runoff, it had

successfully negotiated commutation agreements with many of its insureds, reducing ACIC's coverage liability.  (Id.)[1]  The panel found that the White Mountains reorganization, which included a $400 million contribution from OneBeacon, represented a change in its approach to commutations "in a manner materially adverse to [Global]."  (Id.)  Accordingly, the Tierney Panel ruled that ACIC had breached the Claims Practices Provision.  (Id.)

In its Final Order and Award dated December 16, 2003, the panel awarded Global a 30% reduction of "all losses and loss adjustment expenses paid by ACIC" from January 1, 2002 through December 16, 2003 (the "Discount Period") on contracts that "were not commuted" by ACIC.  (Id.)  The panel explained that a "30% reduction in [Global's] liability directly correlates to . . . the relative motivations of insureds to commute."  (Id.)  The parties stipulated to entry of a final Order and Judgment dated April 7, 2004 confirming the Tierney Panel award.  (Leonard Decl. Ex. 4.)

II.  The Second Arbitration

In 2007, ACIC commenced the Second Arbitration before another panel of three arbitrators (the "Rosen Panel").  The two issues before the Rosen Panel were whether the 30% discount awarded to Global by the Tierney Panel "extended" to ACIC's billings rendered after December 2003, and whether the breach found by the Tierney Panel had been cured.  (Nonna Decl. Ex. G; Pet. ¶ 28.)  In a Final Decision and Award dated March 7, 2008, the Rosen Panel ruled that "the sole remedy for the breach found by the Prior Panel was a reduction in the amount stated exclusively through the Discount Period."  (Nonna Decl. Ex. G at 3 ¶ 3.)  In determining that the Tierney Panel's award was limited to the Discount Period, the Rosen Panel declined to

---

[1] A commutation is a "negotiated settlement between the insured and insurer" wherein the insured decides "that it is in [its] best interest" to accept a commuted liability rather than seek full payment on its claim.  (Id.)  In deciding whether to enter into a commutation agreement, an insured "weigh[s] many factors, including . . . whether the insurer is likely to be able to fund payments in the future."  (Id.)

address whether ACIC's breach of the Claims Practices Provision had in fact been cured.  (Id. at 4 ¶ 6; Pet. ¶ 29; Cross-Pet. ¶ 23.)  The Rosen Panel issued the award "without prejudice to [Global]'s right to assert breaches of the [Agreement] post-December 16, 2003, other than the breach found and relied upon in the Prior Award."  (Nonna Decl. Ex. G at 5 ¶ 5.)

III.    The Third Arbitration

        In March 2008, a subsidiary of Berkshire Hathaway, Inc. ("Berkshire") acquired certain White Mountains subsidiaries, including ACIC and its parent company.  (Pet. ¶ 31; Cross-Pet. ¶ 25.)  On November 3, 2008, ACIC notified Global of the Berkshire acquisition.  (Cross-Pet ¶ 26.)  Global advised ACIC that the Berkshire acquisition constituted a breach of the Claims Practices Provision.  Global also informed ACIC that it intended to seek additional relief arising from the White Mountains reorganization.  (Id. ¶ 27.)  On December 5, 2008, ACIC commenced the Third Arbitration—the subject of this petition and cross-petition.

        The panel for the Third Arbitration (the "Phair Panel") consisted of three arbitrators.  Global's appointed arbitrator, Caleb Fowler, has served as an arbitrator or umpire in more than 200 arbitrations.  (Leonard Decl. Ex. 8.)  Richard White, ACIC's appointed arbitrator, has served as umpire in thirty-four arbitrations and as arbitrator in thirty arbitrations.  (Id.)  James Phair, the umpire appointed by the other two panelists, has served as arbitrator in 159 arbitrations and as umpire in 169 arbitrations.  (Id.)  As required by the Agreement, all three arbitrators are former executives in the insurance or reinsurance industries.

        The Third Arbitration began with a pair of preliminary rulings addressing the scope of the awards rendered in the First and Second Arbitrations.  In a Final Interim Award dated March 24, 2011, a two-arbitrator majority ruled that based on the parties' briefing and oral arguments, the Rosen Panel's award "does not preclude Global from seeking relief in this

arbitration relating to" the White Mountains reorganization subsequent to the Discount Period.
(Nonna Decl. Ex. H.)  In Final Interim Order #2 dated June 22, 2011, the Phair Panel clarified
that Global could assert that the breach found by the Tierney Panel relating to the White
Mountains reorganization had continued beyond December 16, 2003.  (Nonna Decl. Ex. I.)
Regarding the Berkshire acquisition in 2008, the panel stated that Global "must declare the
amount of adjustment that it thinks proper for this alleged breach."  (Id.)  The panel then noted
that neither of its preliminary rulings precluded the parties from alleging additional breaches of
the Agreement.  Finally, the panel reserved decision as to whether the Claims Practices Provision
"shift[ed] the burden of proof to ACIC to disprove both [the] existence of the breach and amount
of the adjustment," requesting the parties to present "evidence on this point at the hearing."  (Id.)

        Following motion practice and briefing on the issues described above, the parties
conducted extensive pre-hearing discovery, which included nine witness depositions and an
exchange of written reports by industry experts.  (Pet. ¶ 39; Cross-Pet. ¶ 34.)  Global then
advised ACIC and the Phair Panel of the relief it sought: a continued 30% reduction on non-
commuted contracts issued after December 16, 2003 based on a failure to cure the breach found
by the Tierney Panel; and a 45% reduction on non-commuted contracts commencing the second
quarter of 2008 based on the Berkshire acquisition.  (Pet. ¶ 38; Cross-Pet. ¶ 35.)  The parties then
submitted evidence and additional briefing on these issues for the panel's review.  (Pet. ¶ 39.)

        The Phair Panel held a seven-day hearing in November 2011 and issued its Final
Award and Order (the "Final Award") on December 5, 2011.  (Nonna Decl. Ex. B.)  The Final
Award is seven single-spaced pages and contains thirty numbered paragraphs.  The Final Award
details the findings of the prior two panels and recites several provisions of the Agreement,
including the Claims Practices Provision and excerpts from the arbitration clause.  (Id. ¶¶ 1–10.)

Over the dissent of ACIC's appointed arbitrator, a majority of the Phair Panel awarded Global a "15% reduction on all losses and loss adjustment expenses paid by ACIC during the period December 17, 2003 until the breach is cured or coverage is exhausted."  (Id. ¶ 22.)  The reduction applied only to contracts that were not commuted during this period.  (Id.)  The panel also awarded Global 3% interest on the balance due.  (Id. ¶ 24.)  The panel found that "based on the unrefuted Global evidence and the Tierney Panel rulings," ACIC had the burden "to disprove both the existence of [a] breach and the amount of adjustment" to Global.  (Id. ¶ 20.)  The panel also found that "neither ACIC, nor its ultimate parents, whether that was White Mountains or Berkshire, took a proactive role in addressing policyholders' perceptions of the financial strength and stability of ACIC" following the White Mountains reorganization and the Berkshire acquisition.  (Id. ¶ 21.)  The panel explained that it was "not presented with evidence that shows that [ACIC or its corporate parents] prepared announcements for distribution to policyholders explaining what, if any, impact these various organizational changes would have on ACIC's runoff."  (Id.)  Accordingly, the panel found that the breach following the White Mountains reorganization in December 2003 "has not been cured, and continues to this day under ACIC's affiliation with Berkshire."  (Id.)

The majority also articulated its basis for awarding Global a 15% reduction as opposed to the 30% and 45% reductions it had requested.  For instance, the panel found no fault "in the manner in which claim settlements and commutations were pursued by ACIC's claim operation" and that many of the factors affecting ACIC's runoff operation "were common to the insurance industry as a whole."  (Id. ¶ 22.)  The panel acknowledged the "credible" arguments advanced by ACIC regarding its settlement negotiations post-December 2003, and noted its "consideration [of] these various factors" in awarding only a 15% reduction.  (Id.)  The Phair

Panel concluded by requesting Global to calculate the amount due under the Final Award.[2]

After issuing its Final Award, the Phair Panel issued a pair of Supplemental Orders addressing how the award would be calculated.  In a Supplemental Order dated January 13, 2012, a majority of the Phair Panel accepted Global's calculation of the principal amount due.  (Nonna Decl. Ex. C.)  Regarding interest, the panel accepted ACIC's "presentation as to [the] interest due" and requested ACIC to prepare a new calculation for its review.  (Id.)  In a second Supplemental Order dated January 27, 2012, the panel awarded Global interest in the amount of $105,000 based on the parties' "interest calculations . . . [and] oral argument." (Nonna Decl. Ex. D.)  The January 27 Supplemental Order also clarified that the panel "d[id] not consider the [Agreement]'s various [coverage] layers and the progression of ACIC losses" within those layers in awarding Global the 15% reduction.  (Id.)

ACIC filed this petition on February 27, 2012 seeking an order to vacate the Final Award, the Final Interim Award dated March 24, 2011, and both Supplemental Orders pursuant to the Federal Arbitration Act (the "FAA").  9 U.S.C. § 10.  Global opposes the petition and has cross-petitioned to confirm and enforce the awards and orders.  ACIC advances several arguments in seeking vacatur.  Among ACIC's arguments are that the Phair Panel issued an award without finding that the precise requirements of the Claims Practices Provision had been satisfied, and that the Phair Panel "overruled" the First and Second Arbitrations by allowing Global to obtain continuing relief for the White Mountains reorganization.  ACIC also complains that the Phair Panel did not adhere to the Agreement's requirements that an arbitral award state

---

[2] The dissenting arbitrator disagreed with the majority's evidentiary findings and with the form of Global's award. The dissent first contended that the evidence did not support a finding that ACIC's "remedial action" addressing the White Mountains reorganization or the Berkshire acquisition was inadequate, or that "there was a material increase in Global's liability from what [it] would have been."  (Id., Final Award Dissent, at 2, 4.)  The dissent also criticized the "indeterminate award" to Global, stating that the majority "cites to no evidence" for awarding Global a 15% reduction and not 30% or 45% as it requested.  (Id. at 3.)

its "reasons therefor[e]" and be issued "in a reasonable manner." (Nonna Decl. Ex. A at G009905–06.) As discussed below, ACIC has offered the Court no basis to vacate the Phair Panel's awards and thus, Global's cross-petition to confirm the awards must be granted.

DISCUSSION

I.      Applicable Law

Where an arbitration "involve[s] parties domiciled or having their principal place of business [outside the United States]," it is subject to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") as codified in 9 U.S.C. §§ 201–08. Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys 'R' Us, Inc., 126 F.3d 15, 19 (2d Cir. 1997) (internal quotations omitted). Where an arbitration is conducted in the United States, "the domestic provisions of the FAA also apply, as is permitted by Articles V(1)(e) and V(2) of the New York Convention." Scandinavian Reins. Co. Ltd. v. St. Paul Marine & Fire Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012); see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 102 n.1 (2d Cir. 2006) ("[T]he FAA and the New York Convention work in tandem, and they have 'overlapping coverage' to the extent that they do not conflict.").

Global is a Barbados corporation with its principal place of business in Barbados. The arbitrations between ACIC and Global occurred in the United States. The parties do not dispute that the FAA governs the petition and cross-petition in this action. Accordingly, the Court will apply the domestic provisions of the FAA to the issues raised herein.

II.     ACIC's Petition to Vacate the Award

"The court's function in confirming or vacating an arbitration award is severely limited." Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997) (internal quotations omitted). The arbitrator's "rationale for an award need not be

explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotations omitted).  Accordingly, a party seeking "to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high."  Id.

The FAA provides "streamlined treatment" for a party seeking "a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it."  Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 582 (2008).  Section 10(a) of the FAA "sets forth specific grounds for vacating" an arbitration award. Jock v. Sterling Jewelers Inc., 646 F.3d 113, 121 (2d Cir. 2011).  "Because the FAA supports a strong presumption in favor of enforcing arbitration awards . . . the policy of the FAA requires that the award be enforced unless one of those grounds is affirmatively shown to exist."  Id. (quoting Wall St. Assocs., L.P. v. Becker Paribas Inc., 27 F.3d 845, 848 (2d Cir. 1994)).  Among those grounds are where the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made."  9 U.S.C. § 10(a)(4).  As a "judicial gloss" on section 10(a), the Second Circuit recognizes two additional bases for vacatur: where the award is in "manifest disregard" of the law or of the terms of the parties' agreement.  Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d 444, 451–52 (2d Cir. 2011) (internal quotations omitted).  In its petition, ACIC seeks vacatur under section 10(a)(4) and both manifest disregard standards. [3]

a.  Section 10(a)(4)

Section 10(a)(4) of the FAA allows a court to vacate an award "where the arbitrators exceeded their powers."  ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co., 564

---

[3] The future of the "manifest disregard" standard is uncertain.  See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758, 1768 n.3 (2010) ("We do not decide whether 'manifest disregard' survives . . . as an independent ground for review . . . .").  Because this Circuit maintains manifest disregard as a "judicial gloss" on the grounds enumerated in section 10(a), the Court considers ACIC's arguments under this standard.

F.3d 81, 85 (2d Cir. 2009) (quoting 10 U.S.C. § 10(a)(4)).  The Second Circuit has "consistently

accorded the narrowest of readings" to this provision.  Id. (quoting Banco de Seguros del Estado

v. Mut. Marine Office, Inc., 344 F.3d 255, 262 (2d Cir. 2003)).  "This is especially true when

section 10(a)(4) is invoked to challenge an award deciding a question which all concede to have

been properly submitted in the first instance."  Jock, 646 F.3d at 122 (internal quotations

omitted).  "If the parties agreed to submit an issue for arbitration, [a court] will uphold a

challenged award as long as the arbitrator offers a barely colorable justification for the outcome

reached."  ReliaStar, 564 F.3d at 86 (internal quotations omitted).  In applying section 10(a)(4),

the Court does "not consider whether the arbitrators correctly decided [the] issue."  Id. at 86

(alteration in original) (quoting Banco, 344 F.3d at 262).  "It is not enough . . . to show that the

panel committed an error—or even a serious error" to vacate an award.  Stolt-Nielsen, 130 S. Ct.

at 1767.  "[A]s long as the arbitrator is even arguably construing or applying the contract and

acting within the scope of his authority, a court's conviction that the arbitrator has committed

serious error . . . does not suffice to overturn his decision."  ReliaStar, 564 F.3d at 86.  Where an

arbitration agreement contains an honorable engagement clause, "arbitrators have wide

discretion to order remedies they deem appropriate."  Banco, 344 F.3d at 261.

          "An arbitrator may also exceed her authority by failing to provide an award in the

form required by an arbitration agreement."  Cat Charter, LLC v. Schurtenberger, 646 F.3d 836,

843 (11th Cir. 2011).  "Generally, an arbitrator need not explain her decision; thus, in a typical

arbitration where no specific form of award is requested, arbitrators may provide a 'standard

award' and simply announce a result . . . ."  Id. at 844; see also United Steelworkers v. Enter.

Wheel & Car Corp., 363 U.S. 593, 598 (1960) ("Arbitrators have no obligation to the court to

give their reasons for an award.").  Where a contractual provision requires a "reasoned" award,

courts have held this requirement satisfied with "something short of findings [of fact] and conclusions [of law] but more than a simple result." Rain CII Carbon, LLC v. ConocoPhillips Co., 674 F.3d 469, 473 (5th Cir. 2012) (quoting Cat Charter, 313 F.3d at 844).  Should the parties "wish a more detailed arbitral opinion, they should clearly state in the agreement the degree of specificity required."  Green v. Ameritech Corp., 200 F.3d 967, 976 (6th Cir. 2000). Accordingly, courts "have generally been reluctant to vacate awards" for failure to render a "reasoned" award.  ConocoPhillips, 674 F.3d at 473.

ACIC raises several arguments in support of its section 10(a)(4) claim.  ACIC first argues that the panel exceeded its authority by awarding Global a reduction "without a finding that the alleged change in [ACIC's] claims practices materially increased Global's liabilities from what they would have been."  (Pet'r's Mem. at 17.)  Second, ACIC argues that the panel's rulings "ignore and effectively write out of the contract" the requirement that any adjustment "make Global's risk position equivalent to that which would have been obtained if there had been no change."  (Id. at 18–19.)  Third, ACIC argues that the panel "exceeded its jurisdiction" by awarding Global 3% interest.  (Id. at 20.)  Lastly, ACIC argues that the panel exceeded its authority by "fail[ing] to provide reasons" for its decision and failing to "effect the general purpose of the [Agreement] in a reasonable manner."  (Id. at 20–23.)[4]

ACIC has not demonstrated that the Phair Panel exceeded its authority by awarding Global a reduction.  In its Final Award, the panel reviewed the findings of the prior panels, quoted the relevant provisions of the Agreement—including the arbitration clause and the Claims Practices Provision—and recited the facts regarding ACIC's acquisition by Berkshire in 2008.  (Nonna Decl. Ex. B.)  The panel then explained that based upon the evidence received at

---

[4] ACIC's argument that the Phair Panel "directly contradicted the final awards of the first and second arbitration panels" (id. at 22) is most properly analyzed under the manifest disregard standard, and is discussed below.

the hearing and in parties' submissions, ACIC failed to take "a pro-active role in addressing policyholders' perceptions . . . of ACIC after the White Mountains reorganization . . . and the later transfer of ownership to Berkshire." (Id. ¶ 21.)  The panel specifically cited the "absence of any direct communication to policyholders reconfirming ACIC's prior stated runoff strategy in light of these changes in corporate structure" in reaching its conclusion. (Id.)  "[I]t is not for the district court to decide whether the arbitrator 'got it right' when the question has been properly submitted to the arbitrator and neither the law nor the agreement categorically bar her from deciding that issue." Jock, 646 F.3d at 124 (quoting ReliaStar, 564 F.3d at 85–86).  The Final Award indicates that the panel was "arguably construing or applying the contract" in finding that ACIC had breached the Claims Practices Provision.  ReliaStar, 564 F.3d at 86.

       The Phair Panel also did not exceed its authority in fashioning Global's precise remedy—15% reduction on losses ACIC incurred on non-commuted contracts, plus 3% interest. The panel first cited the "absence of any direct communication to policyholders explaining" the impact of the White Mountains and Berkshire transactions on policyholders' perceptions of ACIC.  (Nonna Decl. Ex. B. ¶ 21.)  Then, citing ACIC's credible efforts in pursuing settlements and commutations, the panel articulated why Global was entitled to a 15% reduction and not the 45% and 30% reductions Global had requested.  (Id. ¶¶ 21–23.)  The Claims Practices Provision permits the panel to award Global "any adjustments which will make [Global]'s risk position equivalent to that which would have been obtained."  (Nonna Decl. Ex. A at G009909 (emphasis added).)  And in announcing its award, the Phair Panel recited the honorable engagement clause, requiring the panel to effect the Agreement's "general purpose . . . in a reasonable manner rather than in mere accordance with the literal interpretation of the language."  (Nonna Decl. Ex. B ¶ 3

(quoting Nonna Decl. Ex. A at G009906).)  The Phair Panel thus did not abuse or exceed its

"wide discretion to order [the] remedies [it] deemed appropriate."  Banco, 344 F.3d at 261.

ACIC's contention that the award is insufficiently reasoned is similarly

unavailing.  The Agreement requires only that a "decision of the majority of the panel shall be

rendered in writing, stating the reasons therefor [sic], and shall be final and binding."  (Nonna

Decl. Ex. A at G009905–06.)  The parties "did not request findings of fact and conclusions of

law, an exhaustive standard familiar to the courts; rather, they agreed to a reasoned award,

without further elaboration."  ConocoPhillips, 674 F.3d at 474.  Cf. New Elliott Corp. v. MAN

Gutehoffnungshutte AG, 969 F. Supp. 13, 15 (S.D.N.Y. 1997) (vacating award but noting it

"would be hard-pressed" to have done so "[h]ad the Agreement not provided (somewhat

unusually) for written findings of fact and conclusions of law") (parentheses in original).  In

seven pages and thirty numbered paragraphs, the Final Award recites the relevant terms of the

Agreement, the history of the dispute, the findings of the prior panels, and the panel's rationale

for awarding Global a 15%—and not a 30% or 45%—reduction.  (Nonna Decl. Ex. B.)  The

panel thus "rendered more than a standard award, which would be a mere announcement of [its]

decision."  ConocoPhillips, 674 F.3d at 474 (affirming denial of vacatur where eight-page

decision "laid out the facts, described the contentions of the parties, and decided which of the

two proposals should prevail").  The Phair Panel's decision in this case, though not as fulsome or

elucidated as ACIC would like, "was nevertheless adequate to satisfy the terms of the

agreement." Green, 200 F.3d at 970 (reversing vacatur of six-page arbitration award where arbitrator's "minimal" opinion satisfied requirement that the arbitrator "explain" his decision).[5]

Because the Phair Panel was "arguably" acting within the scope of authority, the Final Interim Award, Final Award, and Supplemental Orders will not be vacated under section 10(a)(4).

### b. Manifest Disregard of the Law

An arbitral award should be vacated under the manifest disregard standard "only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." T.Co Metals, LLC v. Dempsey Pipe & Supply Inc., 592 F.3d 329, 339 (2d Cir. 2010) (internal quotations omitted). Manifest disregard requires a two-part showing in which a court considers "first, whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable, and, second, whether the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." Jock, 646 F.3d at 121 n.1 (quoting Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 209 (2d Cir. 2002)). Review under this standard is "highly deferential to the arbitrators, and relief on such a claim is therefore rare." STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC, 648 F.3d 68, 78 (2d Cir. 2011) (internal quotations omitted). An award is vacated "only when a party clearly demonstrates that the panel intentionally defied the law." Id. (internal quotations omitted). Even where the arbitrators "do not explain the reason for their decision," the award will be upheld if the Court "can discern any valid ground for it." Id. "With

---

[5] ACIC's reliance on PMA Capital Ins. Co. v. Platinum Underwriters Bermuda, Ltd., 659 F. Supp. 2d 631 (E.D. Pa. 2008), aff'd, 400 Fed. Appx. 654 (3d Cir. 2010), is misplaced. In that case, the panel issued a one-page decision containing "no reasoning or explanation" in which it awarded the reinsurer a remedy that both parties agreed was not available under their agreement and that neither party had even requested prior to the arbitration. Id. at 633–36. In so doing, the panel "simply eliminated" a key provision of the parties' agreement and "wr[ote it] out of existence" entirely. Id. at 635–36. Those are not the facts here and do not support vacatur in this action.

respect to contract interpretation, this standard essentially bars review of whether an arbitrator misconstrued a contract." T.Co Metals, 592 F.3d at 339.

       In its petition, ACIC argues that the Phair Panel manifestly disregarded the "final and binding effect" of the awards issued by the Tierney and Rosen Panels and "the explicit language of the [New York] Convention and the FAA." (Pet'r's Mem. at 24.) ACIC argues that by awarding Global a reduction based in part on the "continuing breach" arising from the White Mountains reorganization, the Phair Panel contradicted "the First and Second panel's contractually binding final awards" (id. at 23), and the "initial stated justification" as stated in the Final Interim Order prior to the Final Award. (Pet'r's Reply Mem. at 14–17.)

       ACIC has not made a two-part showing that the Phair Panel intentionally defied a clearly governing legal principle. Prior to the hearing, the panel received briefing from the parties regarding the scope and effect of the First and Second Arbitrations. (Nonna Decl. Ex. H; Second Nonna Decl. Ex. A.) Upon consideration of the briefs and oral argument, the Phair Panel determined that the Rosen Panel's 2008 award "d[id] not preclude Global from seeking relief" for post-2003 breaches relating to the White Mountains reorganization. (Id.) The panel specifically noted that it "relied on the information contained in Global's brief [and] attachments" in so determining. (Id.) Manifest disregard means more than an "arguable" dispute over "the meaning or applicability of laws urged upon the arbitrator." T.Co Metals, 592 F.3d at 339 (internal quotations omitted). The panel cannot be said to have "intentionally defied" a clearly governing legal principle in determining the scope of the prior awards under these circumstances. STMicroelectronics, 648 F.3d at 78 (internal quotations omitted).

       Furthermore, in Final Interim Order #2, the Phair Panel advised the parties that it "wish[ed] to be presented with evidence" regarding whether ACIC had the burden to disprove

the existence of a breach related to the White Mountains reorganization as well as the Berkshire acquisition. (Nonna Decl. Ex. I.) In its Final Award, the panel explicitly found that ACIC failed to refute Global's evidence that the "burden of proof under the Claims Practices Provision is on ACIC to disprove both the existence of breach and the amount of adjustment." (Nonna Decl. Ex. B. ¶ 20.) Even were the Court to conclude that the panel erred in determining that Global could seek relief for the White Mountains reorganization notwithstanding the prior two arbitrations, manifest disregard means "more than an error or misunderstanding with respect to the law." T.Co Metals, 592 F.3d at 339 (internal quotations omitted).

An award needs only a "barely colorable justification" to withstand scrutiny under the manifest disregard standard. Id. (emphasis in original) (internal quotations omitted). Because the panel provided a "barely colorable justification" for its rulings, the Final Interim Award, Final Award, and both Supplemental Orders are not subject to vacatur for manifest disregard of the law.

c.  Manifest Disregard of the Parties' Agreement

An arbitral award may also be vacated if rendered in manifest disregard of the terms of the parties' relevant agreement. This standard is "analogous to that employed in the context of manifest disregard of the law." Schwartz, 665 F.3d at 452 (quoting Toys 'R' Us, 126 F.3d at 25). "[V]acatur for manifest disregard of a commercial contract is appropriate only if the arbitral award contradicts an express and unambiguous term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract." Westerbeke, 304 F.3d at 222. "Interpretation of . . . contract terms is within the province of the arbitrator and will not be overruled simply because [a court] disagree[s] with that interpretation." Schwartz, 665 F.3d at 452 (internal quotations omitted).

ACIC's arguments on this ground substantially mirror those raised in support of

its claim under section 10(a)(4).  ACIC argues that the Phair Panel manifestly disregarded the

terms of the Agreement by "ignor[ing] the clear meaning of the material increase in liabilities

term in the Claims Practices Provision."  (Pet'r's Mem. at 17; Pet'r's Reply Mem. at 3–4.)

ACIC then argues that the Phair Panel ignored "the plain and unambiguous terms of the Claims

Practices Provision that require any adjustment to make Global's risk position equivalent to that"

had there been no change.  (Pet'r's Mem. at 18–19; Pet'r's Reply Mem. at 4–7.)  Specifically,

ACIC argues that the "Final Award puts Global in a better risk position [than it would have

occupied] by 'reimbursing' funds to Global on amounts it never paid and never had any liability

to pay, and by discounting Global's liabilities without regard to the coverage layers of the

[Agreement]."  (Pet'r's Mem. at 19.)  Lastly, ACIC argues that the Phair Panel acted in manifest

disregard by awarding Global interest.  (Id. at 20.)

Having reviewed the parties' submissions and the rulings of the Phair Panel, the

Court concludes that the Phair Panel did not intentionally ignore an express and unambiguous

term of the Agreement.  Turning first to ACIC's breach of the Claims Practices Provision, the

panel received pre-hearing briefing from both parties as to whether the provision shifted the

burden to ACIC to disprove the existence of a breach and the amount of any adjustment.  (Nonna

Decl. Ex. H.)  In its Final Award, the panel explained that based on the evidence and

submissions, ACIC bore the burden of proof on these issues.  (Nonna Decl. Ex. B.)  In so

finding, the panel quoted the Claims Practices Provision in full and recounted the findings of the

prior panels.  (Id. ¶¶ 1–10.)  The panel proceeded to explain its findings that the breach found by

the Tierney Panel "has not been cured" and "continues to this day under ACIC's affiliation with

Berkshire." (Id. ¶ 21.)  Implicit in the 15% reduction awarded to Global is that such a reduction

is necessary to "make the Reinsurer's risk position equivalent to that which would have been obtained" without ACIC's breach.  (Nonna Decl. Ex. A at G009909.)  Even where the arbitrators do not fully recount the basis for their decision, the award will be upheld if the Court "can discern any valid ground for it."  <u>STMicroelectronics</u>, 648 F.3d at 78.

Nor did the panel intentionally ignore the terms of the Agreement in calculating Global's precise remedy.  First, the Claims Practices Provision explicitly states that both intentional and "unintentional" changes in ACIC's approach to settling claims could trigger relief to Global.  (Nonna Decl. Ex. A at G009909).  The panel thus did not ignore the terms of the Agreement by explaining that it found no "fault in the manner in which claim settlements and commutations were pursued by ACIC."  (Nonna Decl. Ex. B ¶ 22.)  Second, the Claims Practices Provision makes no mention of the "layered" structure of Global's coverage obligations, and the Agreement's arbitration clause does not explicitly require an arbitrator to adhere to this structure in fashioning its remedy.  (<u>Id.</u> at G009909, G009905–06.)  Nor does the provision address interest payments or the means by which interest shall be calculated.  (<u>Id.</u> at G009909.)  Indeed, the panel adopted ACIC's interest calculation, which it prepared based on "the accounting information available to the parties."  (Nonna Decl. Ex. C.)  Interpretation of contractual terms "is within the province of the arbitrator and will not be overruled simply because [a court] disagree[s] with that interpretation."  <u>Schwartz</u>, 665 F.3d at 452 (internal quotations omitted).

Lastly, in calculating the award described above, ACIC has not shown that the Phair Panel intentionally compensated Global on "amounts it never paid and never had any liability to pay."  (Pet'r's Mem. at 19.)  Prior to issuing its Supplemental Orders, the panel requested and received proposed award calculations from both parties.  The calculation proposed by Global and adopted by the panel is "based on the losses and LAE paid by ACIC between

December 17, 2003 and the Third Quarter of 2011, and that discount is then applied to reduce the sums due from Global." (Leonard Decl. Ex. 16.) The panel then awarded principal and interest pursuant to Global's "understand[ing] as to the interpretation of paragraph 22" of the Final Award. (Nonna Decl. Ex. D.) The Agreement explicitly allows an arbitrator to award Global "any adjustments which will make [Global]'s risk position equivalent to that which would have been obtained." (Nonna Decl. Ex. A at G009909 (emphasis added).) Considered in light of the honorable engagement clause, which required an award "effect[] the general purpose of the Agreement in a reasonable manner rather than in mere accordance with the literal interpretation of the language" (id. at G009906 ¶ I), the Phair Panel cannot be said to have intentionally ignored or contradicted an unambiguous contractual term. See Banco, 344 F.3d at 261 (noting that "arbitrators have wide discretion to order remedies under honorable engagement clauses).

In sum, the Final Award recited the relevant terms of the Agreement and ACIC's corporate changes, referred to the parties' pre-hearing arguments, and incorporated the findings of the prior panels. (Nonna Decl. Ex. B.) Then, following additional briefing and oral argument, the panel addressed the method by which Global's award was to be calculated and issued a pair of Supplemental Orders explaining its determination. Even if ACIC's legal arguments were correct, it still has not directed the Court to an "egregious impropriety" by the panel or shown that it "intentionally defied" a clear and unambiguous term in the Agreement. T.Co Metals, 592 F.3d at 339. Rather, the Phair Panel possessed the requisite "barely colorable justification" in finding a breach by ACIC and calculating its award to Global. ReliaStar, 564 F.3d at 86 (internal quotations omitted). Accordingly, the Final Interim Award, Final Award, and the Supplemental Orders will not be vacated for manifest disregard of the Agreement.

III.     Global's Cross-Petition to Confirm the Award

"Under section 9 of the FAA, 'a court "must" confirm an arbitration award "unless" it is vacated, modified or corrected as prescribed' in [sections] 10 and 11." Scandanavian Reins., 668 F.3d at 78 (quoting Hall St. Assocs., 552 U.S. at 582 (in turn quoting 9 U.S.C. § 9)). "And for petitions brought under the New York Convention, '[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.'" Id. (quoting 9 U.S.C. § 207). Because ACIC has not shown a valid ground for vacating the Phair Panel's rulings under the FAA or the New York Convention, Global's cross-petition to confirm the rulings is granted.

IV.   Global's Cross-Petition to Enforce Supplemental Order No. 2

Global seeks an order enforcing the Phair Panel's Supplemental Order dated January 27, 2012, regarding the calculation of collateral to be posted by Global.  ACIC submits that this motion is premature and, alternatively, is subject to arbitration under the Agreement. The Court declines to address Global's motion to enforce at this stage of the proceeding.  The Court waives the pre-motion conference to allow for the filing of a formal motion on this issue.

CONCLUSION

For the reasons explained, the petition to vacate the award (Docket # 4) is DENIED.  The cross-petition to confirm the award (Docket # 14) is GRANTED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        July 9, 2012